### THE HATHOR.

(District Court, S. D. New York. September 24, 1908.)†

COLLISION (§ 115*)—CHARTERED VESSEL—LIABILITY OF CHARTERER—NEGLIGENCE OF PILOT.

Where a chartered vessel is being operated by the owner on the charterer's business, and she is under the temporary command of a Sandy Hook pilot, provided and paid by the charterer under the agreement, but the navigation of the vessel being under the general control of the owner, in case of collision, the latter is not entitled to have the charterer brought in under the rule to respond for the damages. If the vessel was negligent while under the charge of a compulsory pilot, she would be in fault but that rule does not extend to personal actions. In such cases a compulsory pilot cannot be deemed the agent of either the owner or of the charterer.

[Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 244–247; Dec. Dig. § 115.*]

(Syllabus by the Judge.)

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
†Received for publication January 16, 1909.

Wallace, Butler & Brown, for libellant.
Convers & Kirlin, for the Hathor.
Wheeler, Cortis & Haight, for Munson Line.

ADAMS, District Judge. This action was brought by George L. Hammond & Company, as owners of the barge Lillie C. Hart to recover the damages she received through a collision with the steamship Hathor in the East River on July 18, 1905. The claimants of the Hathor filed an answer denying liability and a petition to bring in the Munson Steamship Line, alleging that the charter party contained the following provisions:

"1. That the owner shall provide and pay for all provisions, wages, and Consular shipping and discharging fees of the Captain, Officers, Engineers, Firemen and Crew; shall pay for the insurance of the vessel, also for all the cabin, deck, engine room, and other necessary stores, and maintain her in a thoroughly efficient state in hull and machinery for and during the service.

2. That the Charterers shall provide and pay for all the Coals, Fuel, Port Charges, Pilotages, Agencies, Commissions, Consular Charges (except those pertaining to the captain, officers or crew), and all other Charges whatsoever, except those before stated."

The petition further alleged:

"Fifth: By the terms of the said charter party the Munson Steamship Line undertook to provide and pay for all pilotages and towage.

Sixth: Under the above mentioned charter party the Munson Steamship Line determined the ports and places to which the steamship Hathor should proceed to discharge her cargo.

Seventh: After the arrival of the steamship Hathor at the port of New York, on the occasion in question, pursuant to the terms of the charter party the Munson Steamship Line assumed the direction and control of the discharge of her cargo, and on the 18th of July the steamship Hathor which had been anchored near the Statue of Liberty, was ordered by the Munson Steamship Line to proceed to Long Island City to discharge her cargo.

Eighth: The Munson Steamship Line on the date aforesaid sent on board the Hathor a pilot who took entire charge of the navigation of the steamship Hathor from her said place of anchorage to her said discharging berth."

The Munson Line excepted to the petition as follows:

"First: In that it does not set forth a cause of action against the said Munson Steamship Line.

Second: In that it does not allege facts sufficient to show that the Munson Steamship Line was responsible for the acts or defaults of the pilot, mentioned in the petition.

Third: In that it does not allege facts sufficient to show that said pilot was the agent of the Munson Steamship Line, or that the Munson Steamship Line was responsible for negligence on the part of said pilot in navigating the Steamship Hathor."

The question presented by the exceptions is whether, under the provisions of the charter, the employer of the pilot, if the vessel was in fault, is responsible for the effects of the collision.

The principal contention of the steamship is that as this court has held a charter of this character to be a demise (Golcar Steamship Co. v. Tweedie Co. [D. C.] 146 Fed. 563) it follows, that while it remains the duty of the owner to navigate the vessel between ports generally, business of handling the vessel in port from the time the pilot comes on board until he leaves when she goes out, is that of the time

charterer and he is consequently responsible for any negligence of the pilot.

With respect to the Golcar Case, in the commissioner's report, which was approved by the court, it was said (page 569):

"By the weight of American authority, it seems to me that the charter in this case operated as a demise of the ship, but with a continued responsibility on the part of the owner for her proper navigation and maintenance."

It is also provided in this form of charter:

"8. That the cargo or cargoes to be laden and/or discharged in any dock or at any wharf or place that the Charterers or their agents may direct, provided the steamer can always safely lie afloat at any time of tide."

On the question of agency, it would be anomalous if the pilot, under the circumstances, should be deemed the agent of the charterer so as to make it responsible for the defective navigation of the vessel. The case seems to be covered by the language of Judge Hough in The Santona (D. C.) 152 Fed. 516, 518, a charter similar in form, where he said:

"Under the very ordinary form of time charter involved in this cause, it shocks knowledge common to all men acquainted with maritime business to say that the owner has surrendered the possession or control or command or navigation of his ship."

I agree with this, but in my view a stronger reason for rejecting the claim lies in the fact that the pilot was compulsorily employed.

It is said by the parties that the effect of such pilotage is not involved here because the case is not strictly within the statute, as these services of the pilot were not rendered while the vessel was coming in from sea, that is, he was not piloting "to or from the port of New York by way of Sandy Hook," but I have no doubt if any further facts were necessary than those contained in the petition to establish that the vessel was legally in charge of a pilot, they would be made to appear by the testimony and presumption arising therefrom. It is fairly well understood that pilots in rendering their services do not leave the vessels when they first anchor but remain on them until their wharves are reached.

The pilotage laws of New York of 1854 and 1857, re-enacted in the statute of 1882 (Laws 1882, p. 512, c. 410, § 2120), provide as follows, viz.:

"Any person not holding a license as pilot under this act, or under the laws of the State of New Jersey, who shall pilot or offer to pilot any ship or vessel to or from the port of New York by the way of Sandy Hook, shall be deemed guilty of a misdemeanor, and, on conviction, shall be punished by a fine not exceeding one hundred dollars or imprisonment not exceeding sixty days; and all persons employing a person to act as pilot not holding a license under this act, or under the laws of the State of New Jersey, shall forfeit and pay to the board of commissioners of pilots the sum of one hundred dollars."

These statutes have been authoritatively held to be compulsory and that in an action at common law, a shipowner is not liable for injuries inflicted exclusively by the negligence of a pilot so employed on his

vessel—Homer Ramsdell Co. v. Comp. Gen. Trans., 182 U. S. 406, 21 Sup. Ct. 831, 45 L. Ed. 1155. In the opinion it was said:

"In The China, affirming the decision of the Circuit Court in admiralty, the liability of a vessel in rem for a collision from the fault of a compulsory pilot was put upon the maritime law, the court saying: 'The maritime law as to the position and powers of the master, and the responsibility of the vessel, is not derived from the civil law of master and servant, nor from the common law.' 'According to the admiralty law, the collision impresses upon the wrongdoing vessel a maritime lien. This the vessel carries with it into whosesoever hands it may come. It is inchoate at the moment of the wrong, and must be perfected by subsequent proceedings.' 'The proposition of the appellants would blot out this important feature of the maritime code, and greatly impair the efficacy of the system. The appellees are seeking the fruit of their lien.' 7 Wall. 68, 19 L. Ed. 67.

Such was the view of the case taken by the whole court in Ralli v. Troop, in which the majority of the judges said of it: 'That decision proceeded, not upon any authority or agency of the pilot, derived from the civil law of master and servant, or from the common law, as to the representative of the owners of the ship and cargo;' 'but upon a distinct principle of the maritime law, namely, that the vessel in whosesoever hands she lawfully is, is herself considered as the wrongdoer liable for the tort, and subject to a maritime lien for the damages.' 157 U. S. 402, 15 Sup. Ct. 657, 39 L. Ed. 742. And the dissenting judges said that in The China 'this court held, contrary to the English, but conformably to the continental authorities, that a vessel was liable for the consequences of a collision through the negligence of a pilot taken compulsorily on board, although it was admitted that, if the action had been at common law against the owner, and probably also in personam in admiralty, there could have been no recovery, as a compulsory pilot is in no sense the agent or servant of the owner.' 157 U. S. 423, 15 Sup. Ct. 671, 39 L. Ed. 757.

In none of the cases in which actions at law have been maintained against the owner of a ship for the fault of a pilot was the owner compelled to employ the pilot."

It is established that an ordinary pilot may proceed in rem against the vessel or in personam against the owner or master (Benedict's Admiralty, 162) but in the latter case, it necessarily proceeds upon the theory of agency and does not apply in cases of compulsory pilotage where no agency exists between the parties.

In actions in rem, no difficulty occurs because a faulty colliding vessel is liable for the results of her negligence but it seems that in a case where she is in charge of a pilot compulsorily employed, the owner can not be held. If that is so in the case of an owner, how can it be otherwise if the pilot is in the employ of the charterer? The latter was certainly in no nearer relation to the pilot than an owner would ordinarily have been and I think it should not be called upon to meet this claim for damages.

Upon either theory herein outlined the result is the same.

The exceptions are sustained and the petition dismissed as to the Munson Line.